UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LINDA FOWKES and
RAYMOND FOWKES and
SHIRLEY BOOTH and
ERICA BOOTH and
SF, a minor,

          Plaintiffs,

                                      Case No. 10-13666

v.                                    Honorable Paul D. Borman
                                      United States District Judge

WAYNE COUNTY, a Michigan County, and
WAYNE COUNTY MEDICAL EXAMINER,
a Michigan Municipal Organization,

          Defendants.

_____/

OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT:

This matter is before the Court on Defendants' Motion for Summary Judgment. The Court held a hearing on December 21, 2011. For the reasons that follow, the Court GRANTS Defendants' Motion for Summary Judgment.

I.      **INTRODUCTION**

On July 4, 2010, Bryan Stephens was found dead with an electrical cord around his neck. The Detectives assigned to the case ordered an autopsy because the death was considered suspicious. On July 5, 2010, the Wayne County Medical Examiner performed a post-mortem examination of Mr. Stephens' body, and determined that the cause of death was asphyxia by hanging, and the

manner of death was suicide. On July 6, 2010, Mr. Stephens' body was released to the removal service. On July 7, 2010, the body was picked up and driven to the funeral home chosen by Plaintiffs.

When Mr. Stephens' body arrived at the funeral home, the funeral home director determined that Mr. Stephens would not be suitable for viewing by the family or embalming because his body had reached an advanced state of decomposition.

On September 14, 2010, Mr. Stephens' mother, step-father, daughter, and two sisters (collectively, "Plaintiffs") filed a lawsuit against Wayne County and the Wayne County Medical Examiner (collectively, "Defendants"). In Count I, Mr. Stephens' step-father, Raymond Fowkes, alleges a loss of consortium; in Count II, Mr. Stephens' daughter, who was subsequently adopted by Mr. Stephens' mother, alleges a loss of society; and in Count III, Plaintiffs allege a violation of 42 U.S.C. §1983.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the nonmoving party's case on which the nonmoving party would bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323; *see also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

III. ANALYSIS

    A.    **Federal Law Claim**

        1.    **Property Interests**

Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Whaley v. County of Tuscola*, 58 F.3d 1111, 1114 (6th Cir. 1995) (quoting *Bd. Of Regents v. Roth*, 408 U.S. 564, 577 (1972)). It is a question of federal constitutional law "whether a substantive interest created by the state rises to the level of a constitutionally protected property interest . . . ." *Id.* Accordingly, the Court looks to the Sixth Circuit's decisions that apply Michigan law to the question of whether a decedent's next of kin has a property interest in a dead relative's body.

In *Brotherton v. Cleveland*, 923 F.2d 477 (6th Cir. 1991), the plaintiff, an Ohio resident, did not consent to the use of the decedent's body parts (his corneas) for transplant purposes. Nevertheless, the coroner's office, pursuant to established procedure, removed the decedent's corneas during the course of the autopsy. The plaintiff brought a 42 U.S.C. §1983 claim alleging that the decedent's corneas had been removed without due process of the law. The district court dismissed the plaintiff's claim under Federal Rule of Civil Procedure 12(b)(6). The Sixth Circuit reversed after examining Ohio law and holding that "the aggregate of rights granted by the state of Ohio to [plaintiff] rises to the level of a 'legitimate claim of entitlement' in [decedent]'s body, including his corneas, protected by the due process clause of the fourteenth amendment." *Brotherton* 923 F.2d at 482.

The underlying facts in *Whaley v. County of Tuscola*, 58 F.3d 1111 (6th Cir. 1995) were very similar to the facts in *Brotherton*. Specifically, the coroner's office removed a decedent's corneas during the course of an autopsy without the consent of the decedent's next of kin, who brought a 42 U.S.C. §1983 action. The district court dismissed the case under Federal Rule of Civil Procedure 12(b)(6). The Sixth Circuit reviewed Ohio and Michigan law and concluded "that they are in substance the same regarding the next of kin's rights in a deceased relative's body." *Whaley* 58 F.3d at 1114. Accordingly, the Sixth Circuit reversed the dismissal, holding "that Michigan provides the next of kin with a constitutionally protected property interest in the dead body of a relative." *Id.* at 1116.

In *Waeschle v. Dragovic*, 576 F.3d 539 (6th Cir. 2009), a resident of a nursing home died after falling and hitting her head. To investigate whether abuse or neglect had caused the fall, the police department requested that an autopsy be performed. The medical examiner performed the autopsy, and removed the decedent's brain for study as part of the autopsy. At the completion of the autopsy, the medical examiner incinerated the brain as medical waste. The decedent's next of kin filed a lawsuit, alleging that the next of kin's due process was violated by not having the opportunity to dispose of her mother's brain. The Sixth Circuit granted summary judgment in favor of the medical examiner based on qualified immunity, but did not rule on whether Michigan law gave the next of kin a constitutionally protected property interest in the decedent's brain. Instead, the Sixth Circuit ordered the district court to grant the defendant's motion to certify that question to the Michigan Supreme Court. *Waeschle*, 576 F.3d at 551.

The Michigan Supreme Court granted the request to answer the question, and answered:

No, assuming that a decedent's brain was removed by a medical examiner to conduct

a lawful investigation into the decedent's cause of death, the decedent's next of kin does not have a right under Michigan law to possess the brain in order to properly bury or cremate the same after the brain is no longer needed for forensic examination.

*In re Certified Question from U.S. District Court for Eastern District of Michigan*, 488 Mich. 1, *3 (2010).[1]

Thus, the law in this district is a decedent's next of kin has a limited constitutionally protected property interest in the decedent's remains. One such limitation is that the next of kin does not have a constitutionally protected property interest in a decedent's remains where the remains are retained for study in furtherance of a lawful investigation.

It is undisputed that the autopsy performed in this case was pursuant to a lawful investigation. The issue in this case is not that the medical examiner retained part of Mr. Stephens' remains as part of the lawful investigation, but rather Plaintiffs' claim that Mr. Stephens' body decomposed while in their custody.

In contrast to the previously discussed cases, here the medical examiner did not take any active steps to retain part of Mr. Stephens' body, but allegedly passively "allowed" the body to decompose.

Decomposition of a dead body occurs naturally. Thus, Defendants are not liable to Plaintiffs unless Mr. Stephens' body was handled in a negligent manner which caused the body to decompose at a rate or to a degree that the body otherwise would not have.[2] *See Azar v. Conley*, 456 F.2d 1382,

---

[1] The Sixth Circuit certified the substantially identical question to the Ohio Supreme Court. *See Albrecht v. Treon*, 617 F.3d 890, 892 (6th Cir. 2010). The Ohio Supreme Court stated that there is no constitutionally protected property interest in human remains retained by the state of Ohio for criminal investigation purposes. *Id.*

[2] This standard harmonizes with MCL 52.205(7) which permits civil liability for a person's negligent act or omission when acting under the authority of the county medical examiner.

1387 (6th Cir. 1972) ("Section 1983 is applicable in the case of acts of omission as well as commission."). As this is an unresolved question of fact, it is inappropriate to grant Defendants' Motion on this ground.

### 2. Municipal Liability

Plaintiffs' Complaint names Wayne County and the Wayne County Medical Examiner, a Michigan municipal organization, as defendants. Plaintiffs' Complaint alleges that Defendant Wayne County is public body "responsible for the actions of its employees under the doctrine of *respondeat superior*." (Compl. ¶ 7)

"A municipality (or in this case a county) 'cannot be held liable under §1983 for an injury inflicted solely by its employees or agents.'" *Perez v. Oakland County*, 466 F.3d 416, 430 (6th Cir. 2006) (quoting *Gregory v. Shelby County*, 220 F.3d 433, 441 (6th Cir. 2000)). More specifically, "a municipality cannot be held liable under Section 1983 under a theory of respondeat superior." *Emery v. City of Toledo*, 178 F.3d 1294, *3 (6th Cir. 1999) (unpublished). Thus, to the extent that Plaintiffs seek to hold Defendants liable under a theory of *respondeat superior*, Plaintiffs' claims are subject to dismissal.

"A municipality can, however, be found liable under §1983 where a policy of the municipality itself causes the constitutional violation at issue." *Emery*, 178 F.3d at *3 (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)). To succeed on such a claim, "a plaintiff must plead and prove an injury caused by an action taken 'pursuant to official municipal policy of some nature.'" *Id.* (quoting *Monell* at 691). Specifically, Plaintiffs must: (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that [their] alleged injury was incurred due to the execution of that policy." *Vereecke v. Huron Valley School Dist.*, 609 F.3d

392, 403 (6th Cir. 2010) (quoting *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). *Vereecke* further quotes *Monell* at 691: A "custom" must "be so permanent and well settled as to constitute a custom or usage with the force of law." *Id.* at 403.

In response to Defendants' Motion, Plaintiffs argue that the "custom" of insufficient funding or monitoring caused the alleged injury. This argument fails because the custom referred to is not a custom within the meaning of the analysis. Moreover, even if insufficient funding or monitoring is considered a custom, Plaintiffs have not shown that the alleged injury was caused by the insufficient funding or monitoring.

For purposes of 42 U.S.C. §1983 analysis pertaining to municipal liability, a policy "often refers to formal rules or understandings . . . that are intended to, and do, establish a fixed plan of action to be followed under similar circumstances consistently and over time." *Spears v. Roth*, 589 F.3d 249, 256 (6th Cir. 2009) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986)).

Accepting Plaintiffs' contentions that the morgue is insufficiently funded or monitored, such characteristics do not fall under the definition of policy, as insufficient funding or monitoring are not specific plans of action. Nor is insufficient funding or monitoring an established practice to be considered a custom. *See id.* ("A municipality can be shown to have a 'custom' . . . provided that the plaintiff offers proof of policymaking officials' knowledge and acquiescence to the established practice.") (citations omitted). Accordingly, Plaintiffs have failed to identify the municipal policy or custom.

Even if insufficient funding or monitoring were considered policies or customs for purposes of the 42 U.S.C. §1983 analysis, Plaintiffs "must also demonstrate a direct causal link between the policy and the alleged constitutional violation in order to show that the municipality's deliberate

8

conduct can be deemed the moving force behind the violation." *Spears*, 589 F.3d at 256 (internal citations omitted). Plaintiffs allege Mr. Stephens' body was in an advanced state of decomposition because the body was not properly refrigerated while in Defendants' care. (Compl. ¶¶ 29, 52, 64) Plaintiffs also allege Defendants generally failed to properly care for Mr. Stephens' body. (*Id.* ¶¶ 39, 50, 56, 63, 67) Plaintiffs, however, do not suggest how the alleged mishandling of Mr. Stephens' body was the direct result of Plaintiffs' allegation that the morgue is insufficiently funded or monitored. Even if Plaintiffs could somehow demonstrate that insufficient funding or monitoring of the morgue was likely to cause the alleged injury, it would not suffice. "Proof merely that such a policy or custom was likely to cause a particular violation is not sufficient; there must be proven at least an affirmative link between policy or custom and violation; in tort principle terms, the causal connection must be proximate, not merely but-for causation-in-fact." *Mann v. Helmig*, 289 F. App'x 845, 850 (6th Cir. 2008) (internal quotations and citations omitted).

Plaintiffs cannot identify the municipal policy or custom that caused the alleged injury. Even if the "custom" that Plaintiffs identify could be considered a custom under the appropriate analysis, Plaintiffs cannot demonstrate a direct causal link between the "custom" and the alleged injury. Accordingly, Plaintiffs' claims are dismissed.[3]

At the instant hearing, Plaintiffs' counsel stated that the reason Plaintiffs have not named any individual technicians was because Defendant had not responded to an interrogatory in which

---

[3] Although Defendants' Motion is a Motion for Summary Judgment, invoking the legal standard for a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is appropriate where Plaintiffs, although able "to *plead* municipal liability in proper fashion, [Plaintiffs are] unable to survive summary judgment because [they] did not provide evidence of an official policy encouraging constitutional torts." *Lawrence v. Bloomfield Twp.*, 313 F. App'x 743, 746 (6th Cir. 2008) (emphasis in original).

Plaintiffs requested Defendants to identify the county employees involved in handling Mr. Stephens' body. Plaintiffs' counsel contended that once Defendants responded to the interrogatory, Plaintiffs could move to amend the complaint. Plaintiffs' claim that they did not have the names of any individual employees is without merit. For example, Defendants' Rule 26 Disclosures to Plaintiffs identifies employees named Janice Bentley, John L. Collins, Millicent V. Holley, Bradford R. Helper, Betty Boyd, Carl J. Schmidt, and Albert Samuels. Plaintiffs were provided with the names of the aforementioned employees, but did not depose any of them.

### B.    State Law Claims

A federal district court has supplemental jurisdiction of all claims related to the claim upon which the court has original jurisdiction. 28 U.S.C. §1367(a). In the present case, the Court has original jurisdiction over only Count III of the Complaint, which alleges a violation of federal law. The Court has supplemental jurisdiction over Counts I and II of the Complaint because Counts I and II are part of the same case or controversy as Count III. Pursuant to 28 U.S.C. §1367(c)(3), the Court declines to exercise jurisdiction over Count I and II because, as discussed above, the Court is dismissing Count III.

The Court "should typically decline to exercise pendent jurisdiction over a plaintiff's state-law claims after dismissing the plaintiffs federal claims." *Brown v. Cassens Transport Co.*, 546 F.3d 347, 363 (6th Cir. 2008) (citing 28 U.S.C. §1367(c)(3) and *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) ("If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.") (citations omitted); *Pickelhaupt v. Jackson*, 364 F. App'x 221, 226 (6th Cir. 2010) ("Although the exercise of supplemental jurisdiction under 28 U.S.C. §1367 is discretionary, when a federal claim

is properly dismissed before trial, it is customary to dismiss the state-law claims without prejudice.").

As discussed above, the Court is dismissing Plaintiffs' federal claim. A district court abuses its discretion where "the interests of judicial economy and the avoidance of multiplicity of suits [does] not trump the interest in needlessly deciding state law issues." *Brown*, 546 F.3d at 363 (internal quotations omitted). Accordingly, the Court declines to exercise jurisdiction over Counts I and II of the Complaint. Accordingly, Counts I and II are dismissed without prejudice.

### IV. CONCLUSION

There is a genuine issue of material fact as to whether Plaintiffs have a property or quasi-property right in Mr. Stephens' body for purposes of a 42 U.S.C. §1983 claim. Defendants cannot be liable under the doctrine of *respondeat superior*. Defendants cannot be held directly liable because Plaintiffs have not identified any relevant municipality policy or custom. Even if Plaintiffs could identify a relevant policy or custom, Plaintiffs have not shown how the alleged injury resulted from such policy or custom.

Accordingly, the Court dismisses Count III of the complaint with prejudice. Because Count I and Count II, the only remaining claims in the Complaint, are based upon state law, the Court declines to exercise jurisdiction over Counts I and II, and dismisses them without prejudice.

IT IS SO ORDERED.

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 12-29-11

11